**Paul SHIRKS, Plaintiff,**

v.

**Elliot L. RICHARDSON, Secretary, Health, Education and Welfare, Defendant.**

**Civ. A. No. 70-C-119-A.**

United States District Court, W. D. Virginia, Abingdon Division.

June 11, 1971.

H. Ronnie Montgomery, Jonesville, Va., for plaintiff.

James G. Welsh, Asst. U. S. Atty., Roanoke, Va., for defendant.

OPINION and JUDGMENT

DALTON, District Judge.

This action presently before the court is a complaint brought under section 205 (g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of

the Secretary of Health, Education and Welfare. The decision rendered by the hearing examiner on May 6, 1970 became the final decision of the Secretary when the Appeals Council denied the plaintiff's request for review on July 3, 1970. The hearing examiner's decision denied the plaintiff his claimed disability insurance benefits because the claimant had not sufficiently substantiated that he was suffering from a disability of such severity that it precluded him from engaging in substantial gainful employment as required by the statute. Plaintiff's claim for disability insurance benefits has been rejected at all levels of the administrative process and he now petitions the district court for review of the Secretary's decision. The sole issue that is before the court in the present action is whether the Secretary's final decision denying the plaintiff his requested disability benefits is supported by substantial evidence.

In the present case, the factual evidence is not in any real dispute. Only the conclusions and inferences to be drawn from the facts are contested in the overall charge of insufficiency. The claimant was born on February 7, 1934 in Rockwood, Tennessee. He completed the fifth grade in public school, but has not had any further academic or vocational training. He is married and has a daughter ten years of age living with his wife and him. The claimant rents his home in Blackwater, Virginia and states that he has been living and supporting his family from food stamps and a now depleted lump sum disability settlement. Claimant alleges in his current application that he has been disabled since July 1968 due to lung and eye difficulties. At the hearing the claimant also testified to the effect that he was suffering from a further list of maladies, including kidney trouble, back trouble and wrist trouble.

The claimant's work history seems to be limited to work in the coal mines, running a punch press and material handling in a manufacturing concern and his last job as a forklift operator. The plaintiff last worked on a regular basis from 1963 to 1968 in the capacity of a forklift operator. In this last occupation, the only physical demand on the plaintiff, other than sitting and driving, was climbing a distance of twenty feet two times a day. The claimant alleges an onset date of his disability of July 1968 although he was gainfully employed during December 1968 at a tobacco warehouse driving a forklift. This job terminated when the warehouse was emptied and all of the employees laid off. Plaintiff had earlier filed an application for disability insurance benefits on November 1962, alleging an onset date of May 3, 1962. His earlier claim was disallowed and no appeal was ever noted.

Some of the plaintiff's medical evidence is of ancient vintage (1959 and 1962) concerning his earlier application for disability insurance benefits which was denied. More recently, he has been examined by Dr. H. A. Kinser, M.D. on January 21, 1969. In his report Dr. Kinser noted that the claimant's major complaint was related to chest symptoms and reported a history of eleven years of work in the coal mines. Dr. Kinser's physical findings were, "Patient is a small, asthenic, white male in no acute distress; all his vital signs are normal. * * * General physical examination is not remarkable for this young man." Dr. Kinser further stated that on January 21, 1969 a chest x-ray was made at Lee General Hospital and was interpreted by Dr. D. B. Jones, a radiologist, as follows, "Examination of the chest: X-ray in the PA view, upright position, 72″, shows questionable bronchitis at the lung roots; otherwise, lung fields, heart, and aorta appear essentially normal, with no evidence of active parenchymal involvement, pulmonary congestion or pulmonary edema." Dr. Kinser's final diagnoses were, "1. Chronic bronchitis 2. Diminished vision 3. Probably should have more of a complete work-up."

There is a report dated March 4, 1969 from a Dr. Truman D. Simmons, M.D., a radiologist at the Appalachian Regional

Hospital. Dr. Simmons made a report based on the study of the plaintiff's chest x-ray as follows, "There is little loss of vertical height of 2 or 3 of the lower thoracic vertebrae, apparently residuals from old trauma. The lung fields are clear except for a multiple discrete calcifications of old granulomatous disease. The heart is of normal size and shape. The CT ratio is 10.2 to 28.5 which is normal. There is an old healed fracture of the right clavicle. There has been no change in the appearance of the chest since 1963." Dr. Simmons' impressions were, "1. Minor old compression deformities in the lower thoracic spine with associated hypertrophic spurring 2. Old healed fracture, right clavicle 3. Discrete calcifications in the lungs, not significant and the chest is essentially negative."

A pulmonary functions test was also performed by Dr. Gilbert L. Hamilton, M.D. on March 4, 1969. Dr. Hamilton reports the vital capacity as 3800 ml; and predicted normal values 3760 ml; the one second timed capacity was 67%; the two second timed capacity was 88.1%; the three second timed capacity was 98.4%; indirect maximum breathing capacity, per minute, was 97L (99%); with predicted normal value of 98L.

A consultive medical report by Dr. Anthony Leger, M.D., is dated March 6, 1969. After a complete examination and follow up report it was the opinion of the specialist in internal medicine as follows:

"Impression:

1. Acute bursitis, left shoulder
2. Chronic bronchitis, certainly aggravated by cigarette smoking
3. Ganglion, anterior aspect of right wrist.

Discussion:

The pulmonary function studies are attached. These were 98% of normal. Chest x-ray is also attached. From the purely clinical point of view the patient has no marked impairment of pulmonary ventilation. I would recommend that he be seen by an ophthalmologist to change his glasses as this has evidently been detrimental to him in obtaining gainful employment. I can see no reason why this patient cannot be employed on a full time basis. A urinalysis probably should be done to rule out chronic renal disease."

Also, at the hearing, testimony was taken from Mr. R. F. Flege in his capacity of a vocational expert. On the assumption posed by the hearing examiner, that the plaintiff had bronchitis, diminished vision of the left eye, compression deformities in the lower thoracic spine and ganglion condition of the right wrist, the vocational expert was of the opinion that the plaintiff could still effectively work as a fork-lift operator as he had done in the past. In addition, Mr. Flege noted that he had made a survey of the five counties near the claimant's home and had found several industries which employed individuals without physical examinations, age limits or educational requirements. Many of these jobs which the vocational expert listed required only brief on the job training periods which the claimant could easily master in a relatively short time. The testimony of the vocational witness seemed to be in direct conflict with that of the plaintiff who stated that he was unable to get work because he was either unable to pass a physical examination or lacked sufficient educational or vocational training. However, the claimant did admit to having worked in the coal mines without having to take a physical.

It was upon this evidence that the hearing examiner concluded that the plaintiff had not met his burden of demonstrating his infirmities, either singularly or in combination, to be of such a severe nature as to be disabling within the meaning of the Social Security Act. It is the opinion of the court that there exists sufficient evidence on which the Secretary based his decision to deny the plaintiff his re-

quested disability insurance benefits. The plaintiff has fallen short of meeting his burden of showing that he is presently unable to engage in any substantial gainful activity. In fact, the most recent medical reports concerning the plaintiff's condition would seem to show quite the opposite to be the case.

Accordingly, summary judgment should be and hereby is granted to the defendant.